Argued and submitted June 16, 1982, reversed and remanded March 16, reconsideration denied April 29, petition for review denied May 31, 1983 (295 Or 122)

FLYNN,
*Respondent,*
*v.*
WACKENHUT CORPORATION et al,
*Appellants.*

(A7902-00802; CA A21554)
660 P2d 705

Michael A. Lehner, Portland, argued the cause for appellants. With him on the briefs were Wm. H. Mitchell and Mitchell, Lang & Smith, Portland.

William B. Wyllie, Salem, argued the cause and filed the brief for respondent.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

ROSSMAN, J.

## ROSSMAN, J.

In this wrongful death action, defendants appeal from a judgment entered after a jury verdict for plaintiff. Plaintiff's decedent was shot by defendant Flickner, who was employed as a security guard by defendant Wackenhut Corporation. Defendants assign error to the trial court's withdrawal from the jury of their contributory negligence defense, as well as several of its evidentiary rulings. We reverse and remand.

Plaintiff's decedent was employed by a salvage company that had begun demolition of a building in downtown Portland. The building had housed several businesses, including the Congress Hotel, the Trailways bus depot and the Greenleaf Company, the business that employed Wackenhut for security and whose offices Flickner was guarding when he shot decedent. Apparently, many of the businesses had ceased operation, but at the time of the shooting the bus depot and the Greenleaf Company were still in operation.

On the day of the shooting, the salvage company had completed its work in the Congress Hotel and was to begin work in another part of the building. Decedent and another salvage company employe, Giger, had been camped out in the lobby of the Congress Hotel during the salvage operation, as was customary for some company employes. After finishing work on the hotel, decedent and Giger moved their personal belongings into the basement of a beauty shop in the building, because they were to begin work somewhere in that part of the building the next day.

On the evening of the shooting, decedent and Giger went to a restaurant for dinner and stayed there for several hours.[1] By Giger's estimate, he had consumed three or four six-packs of beer, and decedent had consumed more than that by the time they left the restaurant. When they returned to the beauty shop basement, they decided to go "creeping," a term Giger used to describe the process of surveying abandoned, ready-to-be-demolished buildings for

---

[1] Giger estimated that they had left the restaurant at about midnight, but the investigating officer testified that he had arrived after the shooting between midnight and 12:15 a.m. The discrepancy is not germane to any issue on appeal.

salvagable items and estimating the type of equipment and time necessary to remove the items. They were often allowed to keep those items found as part of this process that their employer did not want.

Decedent carried a crowbar and Giger a claw hammer for the purpose of dismantling items found. Their employer had told Giger that, other than the Trailways bus depot, there were no longer any operating businesses in the building. The two men proceeded through the building's basement, occasionally breaking pipes or breaking holes in the wall to locate studs. They then continued up to the first and second floors. There was conflicting testimony as to whether they had to force doors or locks as they did so.

Defendant Flickner, who was on the second floor in the hallway of the Greenleaf Company, heard the two men ascending the stairs from the basement to the first floor. He saw them as they rounded the corner and started climbing from the first to the second floor.

The testimony regarding the shooting is conflicting. Flickner testified that when Giger and decedent reached the landing midway between the first and second floor, he shouted "halt" and fired a warning shot. Because decedent continued to come up the stairs toward him, with crowbar in hand, Flickner fired two more shots, one of which killed decedent. Giger, on the other hand, testified that neither he nor decedent saw Flickner until they neared the top of the stairs and heard a voice shout "halt," followed by three shots in rapid succession. Decedent fell following the firing of these shots. This action followed. The jury returned a verdict for plaintiff of $550,000.

Defendants assign error to the trial court's withdrawal from the jury of the defense of contributory negligence. Defendants' answer alleged:

"That any injury or damage allegedly sustained by plaintiff was caused by the negligence of Joel David Flynn in one or more of the following particulars:

"1. In performing acts and conducting himself in a manner which he knew or should have known would precipitate defendant John Percy Flickner's conduct.

"2. In failing to notify the defendant of his presence on said premises.

"3. In failing to stop or retreat to a place of safety after being placed on notice by a warning gunshot.

"4. In trespassing on premises in an area closed to all unauthorized individuals when he knew or should have known the premises was under an armed guard."

■ There was evidence from which the jury could find that decedent had continued to advance toward Flickner after Flickner had shouted a verbal warning and had fired a warning shot. Whether decedent did so and, if so, whether that was reasonable under the circumstances was for the jury to decide. *See Sterling v. City of Albany,* 276 Or 403, 555 P2d 23 (1976). Consequently, it was error for the trial court to withdraw defendants' third allegation of contributory negligence from the jury. For the same reason, defendants' first general allegation of negligence also stated an issue for the jury.[2]

■ Neither of defendants' other allegations of contributory negligence is supported by the evidence. Each is premised on the notion that decedent knew, or should have known, that the building was occupied by businesses other than Trailways and that an armed guard would be securing the area. Giger's uncontradicted testimony, however, was that his employer told them that, except for the Trailways depot, the building was empty. There is no evidence that decedent knew or should have known otherwise. Therefore, it was not error to withdraw defendants' second and fourth allegations of contributory negligence from the jury.

■ ■ Only one of defendants' remaining assignments of error might arise on retrial. Defendants assign error to the trial court's refusal to instruct the jury that plaintiff's allegations of Wackenhut's negligence were stricken because of insufficient evidence. The pleadings were not shown to the jury. Further, there is no requirement that the court inform the jury of issues that are no longer presented by the pleadings. *See* ORCP 59B. The court's refusal to give the requested instruction was not error.

Reversed and remanded.

---

[2] On retrial an instruction on the general language in paragraph 1 would be superfluous if also given with an instruction on the specific allegation in paragraph 3. At any rate, because the question of decedent's contributory negligence in advancing after Flickner's warning should have been submitted to the jury, the case must be remanded for a new trial.