922 P.2d 1077

**Gene ZANOTTI and Pamela Zanotti, Plaintiffs–Respondents,**

v.

**Gary COOK and Patty Cook, Defendants–Appellants.**

No. 22031.

Court of Appeals of Idaho.

July 3, 1996.

Rehearing Denied Aug. 20, 1996.

PERRY, Judge.

This is an appeal from the district court's judgment awarding damages for the breach of a lease agreement. For the following reasons, we affirm.

## I.

## FACTS AND PROCEDURE

Gene and Pamela Zanotti owned 158 acres of farm land near Paul, Idaho. They leased 132 acres of the land to Gary and Patty Cook

pursuant to a written farm lease. The original term of the lease was from February 28, 1991, to December 1, 1991. The lease provided for automatic renewal on December 1, 1991, and again on December 1, 1992, for the coming year. The lease stated that it would expire in December 1993; however, if either party wished to terminate the lease prior to December 1993, then that party was to provide written notice of termination prior to the automatic renewal date.

In 1991 the Cooks farmed the property and paid the Zanottis the amount prescribed by the lease. In November 1991, Gary Cook went to the Zanottis' home and told them that he did not want to continue to farm the property. There was some dispute at trial as to whether Cook's statement was limited to the coming year or if he indicated that he wanted to terminate the lease permanently. M & B Farms, owned by Monty and Brian Ball, farmed the property in 1992 and paid the amount due under the lease. In 1993 no one farmed the property or paid the Zanottis.

In 1993 the Zanottis raised hay on twelve acres of land adjacent to the leased property. They alleged that they were unable to pay for adequate irrigation water for the hay because they did not receive the 1993 lease payments from the Cooks. The Zanottis claimed that, because they were unable to pay for the water, the hay crop yielded less than usual and they lost a portion of their annual profit from the sale of the hay. The Zanottis brought this action to recover the 1993 lease payments and the lost proceeds from their hay crop. Following a court trial, the district court awarded damages in the amount of $15,519 for the 1993 lease payments and $2,892.50 for the lost profit from the hay crop. The Cooks now appeal.

## II.

## ANALYSIS

### A. The 1993 Lease Payments

 The Cooks claim that the district court erred in finding that they were bound by the lease to pay the Zanottis the 1993 lease payments. Findings of fact supported by the evidence and conclusions of law correctly applying legal principles to the facts found will be sustained on appeal. *MH & H Implement, Inc. v. Massey–Ferguson, Inc.,* 108 Idaho 879, 881, 702 P.2d 917, 919 (Ct. App.1985). Appellate judges should defer to findings of fact based upon substantial evidence, but they ought to review freely the conclusions of law reached by stating legal rules or principles and applying them to the facts found. *Staggie v. Idaho Falls Consol. Hosps., Inc.,* 110 Idaho 349, 351, 715 P.2d 1019, 1021 (Ct.App.1986). Substantial evidence is that upon which a reasonable trier of fact would accept and rely in determining whether a point of fact has been proven. *Ernst v. Hemenway and Moser Co., Inc.,* 126 Idaho 980, 987, 895 P.2d 581, 588 (Ct.App. 1995). The party challenging the findings has the burden of showing error, and this Court will review the evidence in the light most favorable to the prevailing party. *Id.*

The Cooks argue that because Gary Cook contacted Gene Zanotti in December 1991 and verbally terminated the lease agreement, the Cooks were not properly held liable for the 1993 lease payment.[1] The district court found that the Cooks "did not notify [the Zanottis] of their intentions to terminate the lease prior to December 1, 1992," and concluded that the Cooks "breached the Farm Lease by ... failing to notify [the Zanottis] in writing of their intention to terminate the lease prior to December 1, 1992." These findings are supported by the Zanottis' testimony at trial.

Gene Zanotti testified that he did not recall any conversation wherein Gary Cook said he was terminating the lease. Pamela Zanotti testified:

> Well, Gary came over and said that he had hurt his back and he wasn't going to be able to put the crops in for the next year, and he asked Gene if it was okay if he got somebody else to put the crops in

---

1. Although certain provisions of the lease and the statute of frauds, I.C. § 9–503, may be implicated in the oral termination of a three-year written lease of real property, these questions need not be addressed due to the disposition of this issue on appeal.

the next year and he said it was Monty and Brian Ball.

Pamela Zanotti further testified that Gary Cook did not state that he wished to terminate the lease. Gary Cook provided a contrary account of the conversation. However, the credibility of witnesses and the weight to be given evidence is the province of the trier of fact. *In re Estate of Wagner,* 126 Idaho 848, 851, 893 P.2d 211, 214 (1995). The evidence in the record, as provided by the Zanottis, was sufficient to support the district court's finding that the Cooks did not attempt to terminate the lease. Hence, we uphold the district court's factual finding that the Cooks did not attempt to terminate the lease and the accompanying conclusion that the Cooks were liable for the lease payments in 1993.

## B. Mitigation of Damages

■ The Cooks claim that the Zanottis failed to mitigate their damages when they did not accept an offer by Donald Rasmussen to lease the property. However, at trial although Gene Zanotti testified that he did not recall any conversation with Rasmussen about leasing the land for $115 per acre, Rasmussen testified that he never made any offer to lease the Zanottis' property. The Cooks did not present any evidence to the contrary. In light of this record, the argument that the Zanottis failed to mitigate by refusing an alleged offer from Rasmussen is without merit.

## C. Lost Proceeds from the Hay Crop

■ The Cooks argue that a breach of the lease agreement did not entitle the Zanottis to damages for the hay crop's reduced yield. The general rule on damages for breach of contract is that they are not recoverable unless they are clearly ascertainable both in their nature and origin and unless it is also so established that they are the natural and proximate consequence of the breach and are not contingent or speculative. *Wing v. Hulet,* 106 Idaho 912, 918, 684 P.2d 314, 320 (Ct.App.1984). Consequential damages

need not be precisely and specifically foreseen, but they must have been reasonably foreseeable, and within the contemplation of the parties when the contract was made.[2] Whether such damages were reasonably foreseeable and within the contemplation of the parties is a question of fact. *Cannon Builders, Inc. v. Rice,* 126 Idaho 616, 620, 888 P.2d 790, 794 (Ct.App.1995). In order to establish recoverable damages for a crop loss, the evidence must show that the loss was produced by a defendant's conduct rather than by such other variables as weather, insects, disease, weeds or the plaintiff's own farming practices. *Wing,* 106 Idaho at 918, 684 P.2d at 320.

In order to be entitled to a damage award for the loss of their hay crop, the Zanottis had to establish that it yielded less hay than usual because of the Cooks' failure to pay on the lease. The district court found:

> Plaintiffs were unable to pay the water assessment for irrigation of crops to be grown upon the leased premises and hay land because of defendants' failure to pay the lease payment, and the 12 acres of hay land received no irrigation.
>
> ... Had plaintiffs been able to irrigate the hay crop, they would have harvested three cuttings of hay, totaling 6 tons per acre for a total of 72 tons.
>
> ....
>
> ... Plaintiffs suffered a loss on this hay crop of $2,892.50 for lack of the ability to irrigate the crop.

Gene Zanotti testified that the Cooks were to provide water to the property and that he was to reimburse them for the portion used to irrigate his hay. He stated that the total water bill for the property was $5,000. He testified that he did not have the money to pay that bill because the Cooks breached the lease agreement. The Cooks argue that because the Zanottis would have been reimbursing them for the water used on the hay, the Zanottis could have paid that portion of the bill. The Cooks argue, therefore, that there is another reason for the poor yield and that the damages are speculative. The Za-

---

**2.** The Cooks have not argued, either before the district court or on appeal, that the damages for reduction of the hay crop were not within the

contemplation of the parties when they entered into the lease.

nottis respond that had the "Cooks paid the lease and/or paid for the water, [the Zanottis] would have had an average hay crop."

There is substantial competent, although conflicting, evidence in the record to support the district court's findings. Hence, we uphold the district court's award of $2,892.50 for the lost proceeds of the Zanottis' hay crop.

### D. Estoppel

Finally, the Cooks assert that the Zanottis, by their conduct, are estopped from bringing this action. The Cooks, however, failed to plead estoppel as a defense in their answer or argue estoppel to the court below. Therefore, we will not consider it for the first time on appeal.

### E. Attorney Fees

 Initially, we note that the Zanottis did not request attorney fees pursuant to I.C. § 12–120(1) or the lease, both of which may have provided for attorney fees in this case without a determination by this Court that the case was pursued frivolously. Rather, the Zanottis sought attorney fees pursuant to I.C. § 12–121 and I.R.C.P. 54. Under I.C. § 12–121 and I.R.C.P. 54(e)(1), a court may award attorney fees to the prevailing party where it finds that "the case was brought, pursued or defended frivolously, unreasonably or without foundation." The Cooks' appeal simply disputes the district court's factual findings, which are supported by substantial although conflicting evidence. An appeal should do more than invite the appellate court to second-guess the trial court on conflicting evidence. *Krebs v. Krebs*, 114 Idaho 571, 576, 759 P.2d 77, 82 (Ct.App.1988). Therefore, we are left with the abiding belief that the appeal, as pursued, was frivolous. Attorney fees and costs are awarded on appeal to the Zanottis.

### III.

### CONCLUSION

Substantial competent evidence in the record supports the district court's finding that the Cooks breached the lease between the Cooks and Zanottis. Therefore, the Cooks

were liable for the lease payment due for 1993. Further, the Zanottis did not fail to mitigate their damages as claimed by the Cooks. Finally, substantial competent evidence supports the district court's finding that the Zanottis lost a portion of the proceeds from their hay crop due to the Cooks' failure to pay for either the irrigation expenses or the lease payment. We affirm the district court's judgment awarding damages for breach of the lease agreement. As pursued, we determined that this appeal was frivolous. Costs and attorney fees on appeal are awarded to respondents, Zanottis.

WALTERS, C.J., and LANSING, J., concur.