982 P.2d 945

**MAGIC VALLEY TRUCK BROKERS, INC., Plaintiff–Appellant–Cross Respondent,**

v.

**David E. MEYER and Continental Truck Freight Brokers, Inc., Defendants–Respondents–Cross Appellants.**

No. 24513.

Court of Appeals of Idaho.

May 7, 1999.

Petition for Review Denied Aug. 24, 1999.

Dillion, Bosch, Daw & Bock, Chdt., Boise, for appellant. C.A. Daw argued.

Beer & Cain, Boise, for respondent. Stephen L. Beer argued.

LANSING, Judge.

Magic Valley Truck Brokers, Inc. ("Magic Valley") sued a former employee, David Meyer, for breach of a noncompetition covenant in his employment contract. Magic Valley also sued Meyer's new employer, Continental Truck Freight Brokers, Inc. ("Continental"), for tortious interference with prospective business advantage and tortious interference with contract. Following a court trial the district court found that Meyer had breached the noncompetition covenant, but the court awarded no damages because it concluded that no actual damages had been proven and that the liquidated damages provision of the noncompetition covenant in Meyer's employment contract was unenforceable. The court also held that Magic Valley had failed to prove the damages element of the interference with contract claim against Continental. Magic Valley appeals, with Meyer and Continental filing cross-appeals.

## BACKGROUND

Magic Valley operates a truck brokerage business which provides service as an intermediary between shippers and transport truckers. Magic Valley identifies truckers who are available to transport loads for shippers and arranges for pickups and deliveries, charging a commission for this service. Magic Valley hired Meyer to serve as a truck

broker in 1984. At that time, Meyer signed a written employment agreement that included the following covenant against competition:

*Noncompetition and Solicitation Agreement.* The Employee agrees that at no time during the period of employment with Magic Valley or for the period of one (1) year immediately following the termination of employment, regardless of the circumstances of termination, will Employee, on behalf of Employee or any other person or corporation, do either or both of the following:

A. Contact any Customer, by any means, with whom Employee had any contact during the employ of Magic Valley for the purpose of arranging shipments of commodities in a truck brokerage capacity.

B. Engage in any capacity in the truck brokerage business, or contact any Customer of Magic Valley (regardless whether Employee contacted the Customer during the employ of Magic Valley) within a radius of 300 miles from Boise, Idaho.

The agreement also provided that Meyer would not, within one year following termination of his employment, copy, use, or give to anyone else, records or information regarding Magic Valley's methods of operation, the identities or commodity-shipping operations of Magic Valley customers, or other specialized information related to Magic Valley's business. The terms of the agreement addressing damages for a breach included the following:

Damage Remedies. Should the Employee breach this Agreement, the damages sustained by the Magic Valley are uncertain, speculative and difficult to ascertain. Accordingly, the parties agree upon a method of determining the damages, that the amount determined is reasonable, and shall constitute liquidated damages and not a penalty. The liquidated damages are as follows:

The agreement then specified that the liquidated damages for violation of the covenant against engaging in competition within a 300–mile radius of Boise would be $5,000 for each calendar month of such competition, and the liquidated damages for violation of the covenants against soliciting Magic Valley customers and using or distributing confidential business information would be $1,000 per customer and $500 per item of information.[1]

In 1996, Meyer became dissatisfied with working for Magic Valley and approached a competitor, Continental, about potential employment. Meyer's father, Dennis Meyer, was already employed by Continental, apparently in a management capacity. On April 30, 1996, Dennis Meyer met with the president of Magic Valley, Wesley Blaser, to discuss the options available to, and constraints on, David Meyer. Dennis Meyer told Blaser that David Meyer could be employed in Continental's Portland, Oregon office, which was more than 300 miles from Boise, if Magic Valley intended to enforce the noncompetition agreement. The trial evidence is in dispute regarding the remaining content and the outcome of the meeting. According to Dennis Meyer, Blaser voiced no objection to David Meyer's going to work for Continental. Blaser, on the other hand, testified that at the meeting he stated his intent to "look at our contract and go by it." Meyer quit his employment with Magic Valley on the day of the meeting and began working for Continental, in its Boise office, the next day.

On May 8, 1996, Magic Valley's attorneys sent written notification to Continental that employment of Meyer within a 300–mile radius of Boise would be viewed as a violation of the noncompetition clause. On June 25, 1996, the attorneys also sent a letter to Meyer expressing the position that his employment with Continental was a violation of the noncompetition covenant and demanding payment of liquidated damages at the rate of $5,000 per month as specified in the employment agreement. When Meyer and Continental failed to comply with Magic Valley's demands, Magic Valley instituted actions against both. Magic Valley alleged that Meyer had breached the noncompetition agreement by working for Continental, by contacting Magic Valley customers, and by

---

1. The contract also authorized an injunction remedy.

using Magic Valley's business information. Against Continental, Magic Valley asserted claims of tortious interference with prospective business advantage and interference with contract. The two lawsuits were consolidated for trial.

After a court trial, the district court found that Magic Valley had not proved that Meyer solicited any Magic Valley customers during his employment with Continental or violated terms of the agreement prohibiting use of Magic Valley's confidential business information. As to that portion of the covenant prohibiting employment in the truck brokerage business within a 300-mile radius of Boise, however, the court found that the restrictions placed on Meyer were reasonable and enforceable and that Meyer had breached this term by his employment with Continental. The court nonetheless declined to award either liquidated damages or actual damages for the breach. The court found that the liquidated damages provision of the contract was exorbitant and void as a penalty and that Magic Valley had failed to prove any actual damages with reasonable certainty. As to the action against Continental, the court found that Magic Valley had not proved interference with its business but did prove that Continental intentionally interfered with the noncompetition covenant. The court concluded that Magic Valley was not entitled to recover for this tortious interference with contract, however, because it had not shown any resulting damages.

On appeal, Magic Valley claims that the district court erred in finding the liquidated damages clause an unenforceable penalty because the defendants neither pleaded such a defense nor met the burden of proving that the clause was a penalty. Magic Valley asserts that it proved entitlement to recover either actual damages or liquidated damages from Meyer and Continental. The defendants filed a cross-appeal, asserting that Magic Valley should be estopped from enforcing the noncompetition agreement or, alternatively, that the district court erred in finding that there was a breach of the covenant by Meyer and tortious interference by Continental.

## ANALYSIS

### A. Standard of Review

When a case has been tried to a court, it is the province of the trial judge to weigh the conflicting evidence and testimony and to judge the credibility of witnesses. I.R.C.P. 52(a); *Kootenai Elec. Coop., Inc. v. Washington Water Power,* 127 Idaho 432, 434–35, 901 P.2d 1333, 1335–36 (1995). On appellate review, the trial court's findings that are supported by substantial and competent evidence will not be set aside. *Kootenai Elec. Coop., Inc., supra; Margaret H. Wayne Trust v. Lipsky,* 123 Idaho 253, 256, 846 P.2d 904, 907 (1993). Further, the trial court's findings of fact will be liberally construed in favor of the judgment entered. *Abbott v. Nampa Sch. Dist. No. 131,* 119 Idaho 544, 547, 808 P.2d 1289, 1292 (1991). This court is not bound by the trial court's legal conclusions, however, and is free to draw its own legal conclusions from the facts presented. *Kootenai Elec. Coop., Inc.,* 127 Idaho at 435, 901 P.2d at 1336; *Kawai Farms, Inc. v. Longstreet,* 121 Idaho 610, 613, 826 P.2d 1322, 1325 (1992).

### B. Estoppel Defense

We consider first an issue raised in the defendants' cross-appeal—whether the district court erred in declining to apply the doctrine of quasi-estoppel against Magic Valley. Quasi-estoppel applies when a person asserts a claim or position inconsistent with a position previously taken, with knowledge of the facts and of his or her rights, to the detriment of the person seeking application of the doctrine. *Sun Valley Hot Springs Ranch, Inc. v. Kelsey,* 131 Idaho 657, 662, 962 P.2d 1041, 1046 (1998); *The Highlands, Inc. v. Hosac,* 130 Idaho 67, 70, 936 P.2d 1309, 1312 (1997); *Mitchell v. Zilog, Inc.,* 125 Idaho 709, 715, 874 P.2d 520, 526 (1994); *KTVB v. Boise City,* 94 Idaho 279, 281–82, 486 P.2d 992, 994–95 (1971). The inconsistent position must have procured some advantage to the challenged party or produced some disadvantage to the other; or the person invoking the estoppel must have been induced to change his position. *Mitchell, supra; KTVB, supra.*

Continental and Meyer assert that, at the meeting between Dennis Meyer and Wesley Blaser on April 30, 1996, Blaser gave the impression that he did not object to Meyer working for Continental in its Boise office. The defendants argue that because Blaser, acting on Magic Valley's behalf, indicated acquiescence in Meyer's change of employment, Magic Valley's claims are barred by the doctrine of quasi-estoppel.

The district court, however, did not accept the defendants' version of the conversation between Dennis Meyer and Blaser. The district court did not find that Blaser had given an impression that he would waive the noncompetition agreement. Rather, the court found that Blaser took the view that he could authorize no action without first talking to his sister (the co-owner of Magic Valley) and to Magic Valley's lawyers. Testimony at trial supports these findings, and this Court will not substitute its view for that of the trial court on issues of credibility, the weight given to testimony, or reasonable inferences drawn from the evidence. *Kootenai Elec. Coop., Inc., supra.* The facts as found by the trial court did not demonstrate a basis for application of quasi-estoppel against Magic Valley.

## C. Breach of Contract

We next address Meyer's argument that the district court erred in finding that he breached the noncompetition covenant. Meyer asserts that because Magic Valley provided no evidence that he contacted Magic Valley customers or improperly used confidential information about Magic Valley's business, it did not prove a breach.

Meyer misreads the contract. The noncompetition covenant prohibits not only contacting Magic Valley's customers but also engaging "in any capacity in the truck brokerage business ... within a radius of 300 miles from Boise, Idaho." It was undisputed at trial that Meyer was employed in Boise as a truck broker for Continental. His argument that this did not constitute a breach of the covenant is without merit.

## D. Tortious Interference with Contract

In its cross-appeal, Continental challenges the trial court's finding that Continental intentionally interfered with the contract between Magic Valley and Meyer. If Continental is correct in this regard, then it should have been deemed a prevailing party below.

Four elements must be proven in order to establish a prima facie case of tortious interference with contract. The plaintiff must show that 1) there was a contract in existence; 2) the defendant knew of the contract; 3) the defendant intentionally interfered with the contract, causing a breach; and 4) injury to the plaintiff resulted from the breach. *Ostrander v. Farm Bureau Mut. Ins. Co.*, 123 Idaho 650, 654, 851 P.2d 946, 950 (1993); *Barlow v. International Harvester Co.*, 95 Idaho 881, 893, 522 P.2d 1102, 1114 (1974). Malice in the sense of ill will is not a required element. *Id.* The trial court found that Magic Valley had proven the first three elements of this tort, but not the final element, injury resulting from the breach.

Continental argues that there could be no tortious interference with the employment contract between Meyer and Magic Valley because Meyer's employment was terminable at-will and he was contractually free to leave at any time. This argument is inapt, however, because the district court did not find that Continental interfered with Magic Valley's *employment* of Meyer but, rather, that it interfered with Meyer's performance of the covenant not to compete.

Knowingly engaging an employee for work that would violate the employee's covenant against competition with a former employer is actionable as tortious interference. On this precise point, Comment (i) to section 768 of the RESTATEMENT (SECOND) OF TORTS states:

An employment contract ... may be only partially terminable at will. Thus it may leave the employment at the employee's option but provide that he is under a continuing obligation not to engage in competition with his former employer. Under these circumstances a defendant engaged in the same business might induce the

employee to quit his job, but *he would not be justified in engaging the employee to work for him in an activity that would mean violation of the contract not to compete.*

(emphasis added). In conformity with this comment, a number of jurisdictions have held that a former employer can recover from a new employer for tortiously interfering with an employee's covenant against competition. *See, e.g., Barnes Group, Inc. v. C & C Products,* 716 F.2d 1023 (4th Cir.1983); *Mixing Equipment Co. v. Philadelphia Gear, Inc.,* 436 F.2d 1308 (3d Cir.1971); *Premix, Inc. v. Zappitelli,* 561 F.Supp. 269 (N.D.Ohio 1983); *Koehler v. Cummings,* 380 F.Supp. 1294 (M.D.Tenn.1971); *Certified Laboratories of Texas v. Rubinson,* 303 F.Supp. 1014 (E.D.Pa.1969); *Mattison v. Johnston,* 152 Ariz. 109, 730 P.2d 286 (App.1986); *Carroll Anesthesia Assoc. v. Anesthecare, Inc.,* 234 Ga.App. 646, 507 S.E.2d 829 (1998); *Fowler v. Printers II,* 89 Md.App. 448, 598 A.2d 794 (1991); *United Laboratories, Inc. v. Kuykendall,* 322 N.C. 643, 370 S.E.2d 375 (1988); *Morgan's Home Equipment Corp. v. Martucci,* 390 Pa. 618, 136 A.2d 838 (1957).

In order to be liable for tortious interference with a noncompetition covenant, it is not necessary that the new employer actively induce the employee to leave his former position. The issue of paramount import is whether the new employer, with knowledge of the covenant, "engag[ed] the employee to work for him in an activity that would mean violation of the contract not to compete." RESTATEMENT, *supra,* § 768 cmt. i. *See Fowler, supra* (holding that inducement to terminate the former employment is not necessary for the tortious interference if the new employer knowingly engaged the employee to perform work that violates the noncompetition agreement). In the case at bar, it is uncontroverted that Continental knew of the existence of the covenant not to compete. Indeed, a representative of Continental initiated discussions with Magic Valley's president to address whether Magic Valley intended to enforce the clause. Continental then intentionally employed Meyer as a truck broker in Boise in knowing violation of the terms of the covenant. Accordingly, the district court did not err in holding that the first three elements of tortious interference with contract had been proved.

## E. Damages

As noted above, the district court declined to award damages against either Meyer or Continental, finding that Magic Valley had not proved actual damages and that the liquidated damage clause was void as a penalty. On appeal, Magic Valley asserts error in both of these determinations.

### 1. Actual damages

When damages are sought for lost business profits, the amount of the loss must be proven with reasonable certainty. *Williams v. Bone,* 74 Idaho 185, 189, 259 P.2d 810, 812 (1953); *Cuddy Mountain Concrete, Inc. v. Citadel Construction, Inc.,* 121 Idaho 220, 225, 824 P.2d 151, 156 (Ct.App. 1992). "Reasonable certainty" does not require that damages be proved with mathematical exactitude, but the evidence must be sufficient to take the damages out of the realm of speculation. *Cuddy Mountain Concrete, Inc., supra; Nelson v. World Wide Lease, Inc.,* 110 Idaho 369, 378, 716 P.2d 513, 522 (Ct.App.1986). Damages also must be shown to be the proximate consequence of the defendant's actionable conduct. *McOmber v. Nuckols,* 82 Idaho 280, 284, 353 P.2d 398, 401 (1960); *Zanotti v. Cook,* 129 Idaho 151, 154, 922 P.2d 1077, 1080 (Ct.App.1996); *Wing v. Hulet,* 106 Idaho 912, 918, 684 P.2d 314, 320 (Ct.App.1984).

The district court's finding that Magic Valley did not prove, with reasonable certainty, actual damages caused by breach of the noncompetition covenant is supported by the trial record. Magic Valley's president acknowledged that he had no evidence of any business being taken from Magic Valley by Meyer. The only evidence presented by Magic Valley bearing on quantification of damages was the testimony of the company's secretary-treasurer. She testified that during Meyer's final twelve months of service for Magic Valley, from May 1, 1995 to April 30, 1996, he generated gross receipts of approximately $97,000, as compared to gross receipts of approximately $57,000 generated

by Meyer's inexperienced replacement. After netting out the salaries of the two individuals, she calculated that the reduction in profit for Magic Valley was approximately $27,000.

The district court was correct in concluding that this testimony did not provide an accurate measure of damages for breach of the noncompetition covenant, for this decline in Magic Valley's profit was the result of Meyer's departure from Magic Valley, not of his employment by a competitor. The same decline in income would have occurred regardless of whether Meyer worked for a competitor or went into an entirely unrelated industry. Meyer's employment was terminable at will, and Magic Valley does not claim entitlement to damages caused merely by his choice to leave the company. Therefore, we perceive no error in the district court's finding that Magic Valley failed to prove actual damages caused by Meyer's breach of the noncompetition covenant or by Continental's tortious interference with Meyer's performance of the covenant.

## 2. Liquidated damages

▪ Historically, courts of equity developed a rule, later adopted by courts of law, that contractual clauses prescribing penalties for a breach of the contract would not be enforced because of the potential for overreaching and unconscionable bargains. JOHN D. CALAMARI & JOSEPH M. PERILLO, THE LAW OF CONTRACTS, § 14–31, at 589 (4th ed.1998). Modern courts continue to refuse to enforce contract clauses that appear designed to deter a breach or to punish the breaching party rather than to compensate the injured party for damage occasioned by the breach. CALAMARI & PERILLO, *supra*, § 14.31, at 590. *See also Graves v. Cupic*, 75 Idaho 451, 456, 272 P.2d 1020, 1023 (1954).

▪ It is permissible, however, for the parties to a contract to set in advance (i.e., to "liquidate") damages for a potential breach if certain criteria are met. The Idaho Supreme Court has expressed the test for an enforceable liquidated damages clause as follows:

> Generally speaking, parties to a contract may agree upon liquidated damages in anticipation of a breach, in any case where the circumstances are such that accurate determination of the damages would be difficult or impossible, and provided that the liquidated damages fixed by the contract bear a reasonable relation to actual damages. But, where the forfeiture or damage fixed by the contract is arbitrary and bears no reasonable relation to the anticipated damage, and is exorbitant and unconscionable, it is regarded as a 'penalty', and the contractual provision therefor is void and unenforceable.

*Graves*, 75 Idaho at 456, 272 P.2d at 1023. *See also Clampitt v. A.M.R. Corp.*, 109 Idaho 145, 148, 706 P.2d 34, 37 (1985); *McEnroe v. Morgan*, 106 Idaho 326, 331, 678 P.2d 595, 600 (Ct.App.1984). The burden of proving that the damages specified in the contract bear no reasonable relation to actual damages or that the liquidated damages are exorbitant and unconscionable rests upon the party seeking relief from the liquidated damages clause. *Howard v. Bar Bell Land & Cattle Co.*, 81 Idaho 189, 197, 340 P.2d 103, 107 (1959); *McEnroe*, 106 Idaho at 332, 678 P.2d at 601; *Lockhart Co. v. B.F.K., Ltd.*, 107 Idaho 633, 636, 691 P.2d 1248, 1251 (Ct.App. 1984); *Fleming v. Hathaway*, 107 Idaho 157, 161, 686 P.2d 837, 841 (Ct.App.1984). *See also* CALAMARI & PERILLO, *supra*, § 14.31 at 593–94.[2]

In the present case, the district court determined that the first prong of the *Graves* test—that accurate determination of actual damages would be difficult or impossible—was satisfied, and neither party takes exception to that finding. As to the second prong, however, the district court concluded that the liquidated damages amount set by Meyer's employment contract was exorbitant and unconscionable and therefore constituted an unenforceable penalty.

▪ Magic Valley first challenges this decision with an assertion that the district court

---

**2.** When a liquidated damages clause is unenforceable as a penalty, actual damages, if proven, are recoverable. *City of Idaho Falls v. Beco Const.*, 123 Idaho 516, 522, 850 P.2d 165, 171 (1993); *Graves*, 75 Idaho at 459, 272 P.2d at 1026.

should not have addressed the penalty issue because Meyer did not plead it in his answer as an affirmative defense. We think that Magic Valley is in no position to make this argument, however, because Magic Valley's complaint did not refer to the liquidated damages clause or request an award of liquidated damages. The complaint requested only "damages in an amount to be proved at trial." Although the claim for liquidated damages was presented at trial without objection from the defendants and was tried by consent, the absence of any claim for liquidated damages in Magic Valley's complaint obviated any burden that would otherwise have fallen upon Meyer under Idaho Rule of Civil Procedure 8(c) to plead an affirmative defense thereto.

Magic Valley next argues that the district court's refusal to enforce the liquidated damages clause was erroneous because, in rendering its decision, the district court observed that "the imposition of $5,000 a month penalty on an employee who was hired at $10,200 per year [3] is clearly a punishment for working in the same business in the same area." According to Magic Valley, this comment discloses error because it shows that the court "made a comparison only to Meyer's trainee salary and not to the actual damages suffered by Magic Valley as a result of the breach."

We do not agree with Magic Valley's assessment of the district court's analysis. In its findings of fact and conclusions of law, the district court clearly recognized and expressed the test to be whether the liquidated damages fixed by the contract "bear a reasonable relationship to the actual damages anticipated to be incurred." The district court's statement comparing the claimed $60,000 in liquidated damages to Meyer's initial salary was merely an additional comment by the court on the severity of the burden upon Meyer as a further indicia that the underlying intent of the clause was to deter or punish a breach rather than to estimate damages.

Finally, Magic Valley argues that the liquidated damages provision should have been enforced because the defendants did not meet their burden to prove that the liquidated damages did not bear a reasonable relation to actual damages. This Court will not overturn a trial court's finding as to whether liquidated damages constitute an unconscionable penalty unless the finding is clearly erroneous. *Clampitt,* 109 Idaho at 149, 706 P.2d at 38.

The trial court's determination here is not clearly erroneous. The defendants showed steps they had taken to ensure that, during the first year, Meyer's employment with Continental would not interfere with Magic Valley's relationship with its existing customers. According to this evidence, Meyer did not contact any businesses that were known to be customers of Magic Valley, and if he received a call from such a business, it was passed on to another broker. He was hired principally to handle the accounts of two produce companies located in Washington and Colorado, areas which were not regularly served by Magic Valley. Continental also presented testimony that it made no profit, but lost money, on Meyer's services during the first year.[4] From this evidence, which was uncontradicted, the trial court could reasonably infer that actual damages suffered by Magic Valley, if any, were minimal and that the $60,000 in liquidated damages sought by Magic Valley was grossly disproportionate and bore no reasonable relation to the actual loss.

Accordingly, we affirm the district court's determination that, on the facts presented here, the liquidated damage clause of the noncompetition covenant was unenforceable.

## F. Attorney Fees

All parties seek an award of attorney fees on appeal pursuant to Idaho Code § 12–

---

3. This finding refers to Meyer's starting salary at Magic Valley in 1984, when the employment contract was executed.

4. It is also noteworthy that Magic Valley presented no evidence of how the rate of $5,000 per month was selected as liquidated damages or to show that this amount was the result of any genuine attempt to estimate damage likely to arise from breach of the noncompetition covenant.

120(3). Magic Valley also claims attorney fees against David Meyer under an attorney fee clause in the employment contract. This Court, however, declines to award attorney fees because we do not view any of the three parties before us as having prevailed in the appeal. Magic Valley, as the appellant, was unsuccessful with respect to the claims of error that it asserted, and the respondents were unsuccessful on the issues raised in their cross-appeal.[5] Therefore, the parties shall bear their respective attorney fees incurred on appeal. *See Baker v. Boren,* 129 Idaho 885, 934 P.2d 951 (Ct.App.1997). For the same reason, no costs are awarded pursuant to Idaho Appellate Rule 40.

## CONCLUSION

Neither the appellant, Magic Valley, nor the respondents and cross-appellants, Meyer and Continental, have shown error in the trial court's decision. Accordingly, the judgment of the district court is affirmed.

Chief Judge PERRY and Judge SCHWARTZMAN, concur.

---

5. Moreover, it should be noted that Magic Valley's claim against Continental sounds in tort, not in contract.