669 P.2d 198

**Richard F. FOLEY, Plaintiff, Counter-Defendant, Respondent,**

v.

**Albert MUNIO and Pauline Munio, Defendants, Counter-Claimants, Appellants.**

No. 13616.

Supreme Court of Idaho.

Sept. 8, 1983.

Michael G. Pierce, Boise, for defendants, counter-claimants, appellants.

Michael E. Donnelly, Boise, for plaintiff, counter-defendant, respondent.

BISTLINE, Justice.

Plaintiff-respondent, Richard Foley, and defendants-appellants, Albert and Pauline Munio, entered into an oral agreement between February and April of 1975 to subdivide and sell property owned by the Munios. The property in question was not at that time zoned for residential development, did not have fire protection, had not been reviewed by the County Health Department or Highway District for development purposes, and had not been surveyed or platted. Foley was to provide services necessary to develop the property and the Munios were to pay the costs and expenses incurred therein. On December 22, 1975, a written contract was executed. Pursuant to the contract, Foley was to receive fifteen percent of the gross proceeds and a six percent real estate commission from the sale of the divided lots. The parties agreed that all work to be performed by Foley would be completed by January 1, 1978.

Between December of 1975 and May of 1976, Foley made numerous requests of the Munios for the payment of expenses incurred in the land development including costs of surveying and platting the property and for various legal fees associated with incorporating the property into a fire protection district. The defendants refused to pay these expenses and also refused to make the property available to Foley for development during this time.

In May of 1976, Foley brought suit against the Munios in district court seeking

specific performance, or, alternatively, damages.[1] On November 12, 1976, the district court ruled against the specific performance claim holding that Foley had an adequate remedy at law for damages.

Following a trial to the court, findings were made that the Munios had breached the contract by refusing to pay the expenses incurred in preparing the property for development. The court found that the Munios' failure to perform their obligations under the contract prevented Foley from completing the development of the land into residential lots, and awarded Foley $15,000 in damages for breach of contract.

■ On appeal, the Munios argue that there is no substantial evidence in the record to support the findings of their breach. They argue that they did not refuse to pay, but that they were temporarily unable to meet Foley's requests because of their financial exigencies. Our examination of the record discloses substantial, albeit conflicting, evidence to support the district court's findings that Foley had performed his obligations under the contract until the time at which he was precluded from doing so because of the Munios' failure to pay the expenses necessary for the development. The record demonstrates that Foley made repeated requests of Mr. Munio for money with which to hire a contractor to survey the land. Mr. Munio repeatedly assured Foley that the $500 initial fee to hire the contractor would be forthcoming in two weeks, which did not come about. Foley's testimony, which the court was at liberty to believe, included that Mr. Munio, even though failing and refusing to pay these and other expenses necessary to subdivide the land, threatened Foley with immediate sale of the land if he did not proceed to perform all things necessary in order to subdivide the land. Foley testified to being in the Munio home in April or May of 1976 when Mr. Munio had been discussing with a contractor having his pool reconditioned. Foley stated that he had, at that point,

again asked Munio for the $500 to begin the land survey, and that he told Munio that, if he had the money for the swimming pool repair, he should be able to find the money for the survey—to which Munio replied that he was going to do with his money as he saw fit and that he did not care what Foley thought about it. Thus, we hold that there is substantial evidence to support the district court determination that the Munios breached the contract.

The Munios next argue that Foley did not have a legal basis with which to bring suit for breach of contract prior to January 1, 1978, the time at which Foley's performance under the contract was to be completed. They argue that the suit was one for anticipatory breach of contract which doctrine, if accepted in Idaho, would require the defendant's refusal to perform to have been positive, definite, absolute, unconditional and unequivocal. They contend that the record does not support a finding that such an anticipatory breach occurred.

An anticipatory breach of contract has been defined as "a repudiation [by the promisor] of his contractual duty *before the time fixed in the contract for his performance has arrived.*" *STC, Inc. v. City of Billings,* 168 Mont. 364, 543 P.2d 374, 377 (1975) (emphasis added). The rule regarding anticipatory breach of contract is succinctly set forth in 17A C.J.S. § 472(1) (1963):

> "An essential element of a true anticipatory breach of a contract is that the repudiation of renunciation by the promisor occur *before his performance is due* under the contract. Where a party bound by an executory contract repudiates or renounces his obligation before the time for performance, the promisee has, according to the great weight of authority, an option to treat the contract as ended, as far as further performance is concerned, and to maintain an action at once for the damages occasioned by such anticipatory breach, repudiation, or renunciation, even

---

1. The Munios counterclaimed to Foley's complaint which counterclaim was voluntarily dis- missed by the Munios at trial.

in the absence from the contract of a specific provision authorizing the maintenance of an action or the declaring of a forfeiture. (Footnotes omitted) (emphasis added).

■ Concededly, Foley's performance under the contract was not required to be completed until January 1, 1978. However, this is not relevant to determining if the Munios performed their covenant to meet the ongoing expenses. The contract provided that: "The parties of the first part [the Munios] will make available the real property described above, which they own, for development into residential lots and they will pay all expenses of development and all expenses incurred in development." This did not amount to a provision that Foley would initially stand these expenses and be reimbursed later. Thus, the Munios were obliged to meet the ongoing expenses and there was a *present* breach of contract, equivalent to notice that the Munios would not perform. It was no error for the trial court to award damages for that breach and there was no requirement that Foley delay his action for damages. Obviously, on the filing of suit, the Munios could have agreed to specifically perform as prayed for in the complaint.

■ Finally, the Munios argue that the trial court's $15,000 damage award to Foley was improper. The trial court found that:

"The value of the property as bare ground developed into residential lots was $100,000.00. Had the defendants performed according to their agreement with the plaintiff, the plaintiff would have received at least fifteen percent (15%) of $100,000.00. The amount of $15,000.00 is also the fair value of the services performed by the plaintiff to the defendants' benefit."

R., p. 29.

2. The trial court did not award Foley any damages for his loss of the six percent real estate commission as provided in the contract, it having found that "at the time of the agreement

The trial court's determination, substantiated by the record,[2] is affirmed, with costs and attorney's fees awarded to respondent.

DONALDSON, C.J., and SHEPARD, BAKES and HUNTLEY, JJ., concur.

the plaintiff was not licensed as a broker and could not have collected the commissions as specified in the agreement." R., p. 28.