**IN THE SUPREME COURT OF THE STATE OF IDAHO**
**Docket No. 46133**

| | | |
|---|---|---|
| **BRIAN D. TRUMBLE,** | ) | |
| | ) | |
| Plaintiff-Counterdefendant-Appellant-Cross Respondent, | ) | Boise, May 2019 Term |
| | ) | |
| v. | ) | Opinion Filed: December 17, 2019 |
| | ) | |
| **FARM BUREAU MUTUAL INSURANCE** | ) | Karel A. Lehrman, Clerk |
| **COMPANY OF IDAHO, an Idaho** | ) | |
| **corporation; WESTERN COMMUNITY** | ) | |
| **INSURANCE CO., an Idaho corporation;** | ) | |
| **FARM INSURANCE BROKERAGE CO.,** | ) | |
| **INC., an Idaho corporation,** | ) | |
| | ) | |
| Defendants-Counterclaimants-Respondents-Cross Appellants. | ) | |

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Nancy A. Baskin, District Judge.

The district court's grant of summary judgment for Farm Bureau is affirmed. The district court's grant of summary judgment for Trumble on Farm Bureau's counterclaims is also affirmed.

Points Law, PLLC, Boise, and Eberle, Berlin, Kading, Turnbow & McKlveen, Chtd, Boise, attorneys for Appellant. Michelle R. Points argued.

Racine, Olson, Nye & Budge, Pocatello, attorneys for Respondent. Lane V. Erickson argued.

_____

BEVAN, Justice

## I.     NATURE OF THE CASE

This case is about whether a career agent for Farm Bureau Mutual Insurance Company can collect service bonus commissions that were credited to him during his career, but which became forfeitable after the agent's termination if the agent competed with Farm Bureau within one year of his termination. The district court held that the agent forfeited his commissions by

1

competing with Farm Bureau in violation of the one-year non-competition requirement. We agree, affirming the district court's judgment dismissing the agent's claims.

In addition, this case is about Farm Bureau's counterclaims against the agent, alleging the agent misappropriated trade secrets and intentionally interfered with Farm Bureau's prospective economic advantage after his termination. The district court held that the agent was blameless for his actions after termination and dismissed Farm Bureau's counterclaims. We likewise agree with this determination, and affirm the district court's dismissal of Farm Bureau's counterclaims.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

In December 1995, Brian D. Trumble entered into a Career Agent's Contract ("Agent Contract") with Farm Bureau. Under the Agent Contract, Trumble was an independent contractor who procured insurance from interested buyers on Farm Bureau's behalf. The Agent Contract included a non-competition clause which stated:

> Upon termination of this contract, Agent shall not compete in any way with [Farm Bureau] for a period of ninety days from the date of termination within a radius of fifty miles from Agent's residence at the time of termination. Competition includes but is not limited to the following:
> a. Employment as an insurance agent, independent contractor or employee of any other insurance company or agency selling or brokering the same or similar type of insurance as [Farm Bureau];
>
> b. Soliciting casualty, property, disability, life or health insurance;
>
> c. Owning or operating any brokerage or independent insurance agency; or
>
> d. Providing any information to [Farm Bureau's] competitors about [Farm Bureau's] rates, insurance policies, insureds, or policy forms.

At about the same time Trumble entered into the Agent Contract with Farm Bureau, Farm Bureau provided Trumble with a separate document titled "Career Agent's Service Bonus Commission Memorandum of Understanding" with an effective date of January 1, 1994 ("1994 Memorandum"). The 1994 Memorandum explained:

> As of January 1, 1994, each qualifying, full-time agent under contract [with Farm Bureau] will be eligible to receive a service bonus commission after termination if the agent meets the conditions set forth each year and does not compete with [Farm Bureau] for a period of one year after he or she has terminated.

Neither party signed the 1994 Memorandum.

In 2011, Farm Bureau revised the 1994 Memorandum and issued another version of the "Career Agent's Service Bonus Commission Memorandum of Understanding" ("2011

Memorandum").[1] The language quoted above remained substantially unchanged[2] but multiple sections were added to the 2011 Memorandum that were absent from the 1994 Memorandum. Those sections read:

> After completion of each qualifying service year, the service bonus commission credit will be placed on deposit. . . . The commission credit made on behalf of each agent and interest will not become payable to agent, however, until the agent complies with all other requirements of the plan, terminates, and fulfills the no competition requirements. Any commission credit which does not become payable to agent will revert back to [Farm Bureau].

> The no competition restriction referred to above means that the agent shall not own, operate or be employed as an agent, independent contractor or employee of any other insurance company . . . for a period of one year from the date of termination within a radius of fifty (50) miles of the agent's residence at the time of termination. A violation of the no competition restriction will result in forfeiture of the service bonus commission and interest credited.

> The service bonus commission will be paid one year after the agent terminates their contract with [Farm Bureau], provided the no competition restriction is observed. . . . No service bonus will be paid to any agent committing fraud, dishonesty or other material agent misconduct.

From December 1995 until Trumble's termination in May 2016, Trumble was a qualifying agent who met the requirements to earn the service bonus commission every year. On January 26, 2016, Farm Bureau sent Trumble a letter showing that he had qualified for service bonus commissions totaling $251,431.96, if he met "all requirements of the program . . . before and after termination of [his] contract."

On May 4, 2016, Farm Bureau terminated Trumble's Agent Contract for alleged dishonesty. The next day, Trumble's counsel sent a letter to Farm Bureau requesting that it restore Trumble as an agent and further requesting that if Farm Bureau did not rescind its

---

[1]There is a discrepancy between the parties about when the language was first changed. According to Farm Bureau, Trumble was given a similar memorandum in 1996, shortly after he started working at Farm Bureau, with the added language. Trumble also received later memorandums dated in 1998, 2004, 2009 and 2010. While Trumble does not disagree that the 1996, 1998, 2004, 2009, and 2010 memorandums were provided to him and that they contain language more aligned with the 2011 memorandum, Trumble asserts the 2011 Memorandum is controlling because it was the only other Memorandum with an effective date listed. For this appeal, the district court found that the 2011 Memorandum is controlling and neither party contests that holding on appeal. Thus, we will focus on the 2011 Memorandum.

[2] The language in the 2011 Memorandum changed "one year after *he or she* terminated" to "one year after *they* terminated." Additionally, the 2011 Memorandum begins "As of January 1, 2011," instead of "As of January 1, 1994."

termination, that Farm Bureau immediately pay Trumble the bonus commission in full. Farm Bureau's counsel responded on May 9, 2016, explaining that "[Trumble's] [A]gent [C]ontract was ending in part, due to his dishonesty in listing a property in which he held a partial ownership interest, in which he did not reside, as his primary residence, when he knew full well that it was not." Farm Bureau expressed the view that based on the dishonesty provision in the 2011 Memorandum, Farm Bureau had no contractual obligation to pay any service bonus commissions to Trumble. The letter also noted that "even if Mr. Trumble were entitled to his service bonus, the [2011] Memorandum contains a non-competition clause restricting payment until after compliance for a 12-month period."

Two weeks later Trumble filed his complaint, seeking declaratory relief and requesting the district court: (1) find the 90-day covenant not to compete in the Agent Contract unenforceable; and (2) order Farm Bureau to immediately pay Trumble the service bonus commission. Trumble then filed a motion for summary judgment seeking a ruling that (1) the non-competition agreement in the Agent Contract was unenforceable and (2) the non-competition and forfeiture provisions in the 2011 Memorandum were unenforceable.

The district court denied summary judgment, holding that the issue over the non-competition clause in the Agent Contract was moot because more than ninety days had passed. The district court also relied particularly on *Anderson v. Farm Bureau Mut. Ins. Co.*, 112 Idaho 461, 470, 732 P.2d 699, 708 (Ct. App. 1987) (*abrogated on other grounds by Metcalf v. Intermountain Gas Co*., 116 Idaho 622, 778 P.2d 744 (1989), in ruling that the one-year non-competition and forfeiture clauses in the 2011 Memorandum were enforceable as a matter of law. The district court explained:

> [Trumble] . . . asserts that the non-competition restriction in the service bonus commission memorandum is only applicable if the <u>agent</u> terminates his or her contract. . . . In interpreting this provision, [Trumble] focuses only on the phrase "after they have terminated" rather than considering the sentence as a whole. The plain language of the provision indicates the general terms of eligibility "to receive a service bonus commission <u>after termination</u>." In terms of such eligibility, there is no indication that agents who elect to terminate their contracts are treated any differently from agents who have their contracts terminated by [Farm Bureau]. Under [Trumble's] interpretation, an agent whose contract is terminated by [Farm Bureau] would not be eligible to receive any service bonus commission, because the memorandum contains no separate statement defining

4

eligibility under that circumstance. For these reasons, the court cannot conclude that the non-competition restriction is inapplicable to [Trumble] simply because he did not elect to terminate his contract with [Farm Bureau].

(Emphasis in original).

About six months later, Trumble moved for reconsideration. Significantly, for purposes of this appeal, Trumble asserted generally that the forfeiture clause in the 2011 Memorandum was overbroad and that the forfeiture provision should not be enforced because it was unreasonable. Trumble sought to distinguish *Anderson*, arguing that it was inapplicable to his case because he had *earned* the service bonus commissions, unlike the agent in *Anderson*. Trumble did not argue that the non-competition clause was ambiguous, or that it should be construed against Farm Bureau.

On reconsideration, the district court held that the 2011 Memorandum is not ambiguous. The court also upheld the forfeiture provision in the 2011 Memorandum, noting that "[a]lthough the law does not favor forfeitures, courts will generally uphold contracts that expressly provide for forfeitures." (quoting *Hull v. Giesler*, 156 Idaho 765, 779 (2014)). The court also noted that forfeitures must strictly follow the contract terms and that "[t]here is no showing . . . that [Farm Bureau] did not follow the terms of the 2011 Memorandum in denying [Trumble's] request for payment of his service bonus prior to the satisfaction of all the terms of the 2011 Memorandum."

During the litigation, Trumble had generated a list ("Subject List") containing the names and addresses of 578 individuals, some of whom were customers of Farm Bureau. Trumble compiled the list from personal contacts in his phone, old commission statements, old calendars and his own personal knowledge and experience. After the ninety-day non-compete in the Agent Contract had elapsed, Trumble began working for one of Farm Bureau's competitors, Post Insurance, and began soliciting new customers from the Subject List. Farm Bureau learned of the solicitation after a customer notified Farm Bureau about receipt of a solicitation letter. Additionally, some customers requested to have their policies with Farm Bureau cancelled as a result of a solicitation letter.

Based on this information, Farm Bureau filed its answer and asserted two counterclaims: (1) Trumble violated the Idaho Trade Secrets Act ("ITSA"); and (2) Trumble intentionally interfered with Farm Bureau's prospective economic advantage. Soon after, Trumble moved for summary judgment on both of Farm Bureau's counterclaims, asserting that Trumble did not

violate the ITSA and that Trumble did not interfere with Farm Bureau's prospective economic advantage. The district court ultimately agreed with Trumble, granting summary judgment to him on the counterclaims, ruling that Trumble did not misappropriate any trade secrets or intentionally interfere with Farm Bureau's prospective economic advantage.

During this same period, Farm Bureau also brought a motion for summary judgment asserting that Trumble's admitted competition with Farm Bureau within one year of his termination acted as a forfeiture of the service bonus commission under the 2011 Memorandum. In response, Trumble argued that summary judgment should be granted to him "on the grounds that Farm Bureau's actions and representations made Trumble's compliance with the terms of the [2011 Memorandum] futile and/or were an anticipatory breach. . . ." Trumble did not argue that the terms of the Memorandum were ambiguous or that it should be construed against Farm Bureau. Indeed, Trumble agreed with what a plain reading of the 2011 Memorandum required of him in his memorandum opposing summary judgment:

> Farm Bureau is correct that the Career Agent's Service Bonus Commission Memorandum of Understanding at issue in this case [the 2011 Memorandum] conditioned payment of the service bonus commission upon Trumble not competing with Defendants for a period of one year. It is also true that Trumble competed with Farm Bureau prior to the expiration of one year. However, Farm Bureau ignores the key undisputed fact explaining why Trumble did not honor the non-compete condition contained in the [2011 Memorandum]: namely, that Farm Bureau made absolutely clear that it would not pay the service bonus commissions even if Trumble complied with the non-compete provision.

Trumble also argued that "Farm Bureau should be estopped from asserting that Trumble was required to comply with the one year term of the non-compete based upon Farm Bureau's past inconsistent statements." He based this argument on doctrines of quasi estoppel, anticipatory repudiation and/or futility, which he contended nullified the non-competition condition in the 2011 Memorandum when Farm Bureau declared it would not pay the service bonus commission based on Trumble's alleged dishonesty.

The district court granted summary judgment for Farm Bureau, holding: (1) the 2011 Memorandum was not ambiguous about what would occur if an agent is terminated; and (2) the non-competition language amounted to a forfeiture provision, which was enforceable and was

6

not unconscionable. Thus, the court held that Farm Bureau did not breach any contract it had with Trumble and that Trumble had no right to the service bonus commission.

The district court did not award attorneys' fees or costs to either party. Both parties appealed.

### III.    ISSUES ON APPEAL

1. Whether the district court erroneously granted summary judgment for Farm Bureau, finding Trumble had no right to the service bonus commission because he did not satisfy the eligibility requirements.

2. Whether the district court erroneously granted summary judgment for Trumble, finding no misappropriation of any trade secret or intentional interference with a prospective economic advantage.

3. Whether either party is entitled to attorneys' fees and costs on appeal.

### IV.    STANDARD OF REVIEW

This Court employs the same standard as the district court when reviewing rulings on summary judgment motions. *La Bella Vita, LLC v. Shuler*, 158 Idaho 799, 804–05, 353 P.3d 420, 425–26 (2015). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." I.R.C.P. 56(a). A moving party must support its assertion by citing particular materials in the record or by showing the "materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact[s]." *See* I.R.C.P. 56(c)(1)(B). Summary judgment is improper "if reasonable persons could reach differing conclusions or draw conflicting inferences from the evidence presented." *La Bella Vita,* 158 Idaho at 805, 353 P.3d at 426 (quoting *McPheters v. Maile*, 138 Idaho 391, 394, 64 P.3d 317, 320 (2003)). Even so, a "mere scintilla of evidence or only slight doubt as to the facts is not sufficient to create a genuine issue of material fact for the purposes of summary judgment." *Id*. (quoting *Van v. Portneuf Med. Ctr.*, 147 Idaho 552, 556, 212 P.3d 982, 986 (2009)).

### V.    ANALYSIS

**A. The district court correctly granted summary judgment for Farm Bureau.**

1. The district court's conclusion that the 2011 Memorandum was unambiguous is affirmed.

7

The first issue that we must resolve is the proper scope and reviewability of Trumble's first issue on appeal--whether the non-competition clause in the commission contract only applies if Trumble terminates the commission contract. Trumble now asserts that the non-competition requirement in the 2011 Memorandum does not apply to him because Farm Bureau terminated his agent's contract, rather than Trumble terminating the contract himself. The problem for Trumble in raising this argument on appeal is that he did not raise the argument in opposing Farm Bureau's motion for summary judgment. As a result, Trumble is bound "to the theory upon which the case was presented to the lower court." *State v. Garcia-Rodriguez*, 162 Idaho 271, 275, 396 P.3d 700, 704 (2017) (citing *Heckman Ranches, Inc. v. State, By & Through Dep't of Pub. Lands*, 99 Idaho 793, 799–800, 589 P.2d 540, 546–47 (1979)); *see also State v. Cohagan*, 162 Idaho 717, 721, 404 P.3d 659, 663 (2017) (explaining this Court will not consider an alternate theory on appeal when that theory was conceded below).

As noted above, in response to Farm Bureau's motion for summary judgment, Trumble argued that summary judgment should be granted to him "on the grounds that Farm Bureau's actions and representations made Trumble's compliance with the terms of the [2011 Memorandum] futile and/or were an anticipatory breach. . . ." Trumble also argued that "Farm Bureau should be estopped from asserting that Trumble was required to comply with the one year term of the non-compete based upon Farm Bureau's past inconsistent statements." He based this argument on doctrines of quasi estoppel, anticipatory repudiation and/or futility, which he contended nullified the non-competition condition in the 2011 Memorandum when Farm Bureau declared it would not pay the service bonus commission based on Trumble's alleged dishonesty.

Trumble did not argue that the terms of the Memorandum meant something different than Farm Bureau argued in its motion for summary judgment. He simply argued on other grounds (which will be discussed below) why the non-competition clause should not be enforced against him. Beyond that, he explicitly agreed that Farm Bureau was *correct* in its assertion of what the language in the 2011 Memorandum required of him. He stated in his memorandum opposing summary judgment:

> *Farm Bureau is correct* that the Career Agent's Service Bonus Commission Memorandum of Understanding at issue in this case [the 2011 Memorandum] *conditioned payment of the service bonus commission upon Trumble not competing with Defendants for a period of one year*. It is also true that Trumble competed with Farm Bureau prior to the expiration of one year.

8

> However, Farm Bureau ignores the key undisputed fact explaining why Trumble did not honor the non-compete condition contained in the [2011 Memorandum]: namely, that Farm Bureau made absolutely clear that it would not pay the service bonus commissions even if Trumble complied with the non-compete provision.

(Emphasis added).

Thus, Trumble has admitted that the 2011 Memorandum applied to him, no matter how his affiliation with Farm Bureau ended. Trumble is now bound by this concession made in his briefing. *See Cohagan*, 162 Idaho at 721, 404 P.3d at 663; *see State v. Hoskins*, 165 Idaho 217, 224-25, 443 P.3d 231, 238–39 (2019) (reiterating that this Court will not consider an alternate theory when that theory was conceded below). Trumble abandoned his original theory when he opposed Farm Bureau's summary judgment motion below, and he cannot resurrect the theory now, on appeal. Indeed, Trumble acknowledged in his opening brief on appeal that "neither Trumble nor Farm Bureau argued that the [2011 Memorandum] was ambiguous below, and a review of the [2011 Memorandum] *establishes it is not ambiguous*." (Emphasis added).

The only way for Trumble to argue that the 2011 Memorandum means something different from what the district court determined is to claim that the 2011 Memorandum *is* ambiguous. *Kunz v. Nield, Inc.*, 162 Idaho 432, 439, 398 P.3d 165, 172 (2017) ("A contract term is ambiguous when there are two different, reasonable interpretations of the language."). If that were his argument, we would be constrained to review the document's language critically, and apply rules of construction that govern when contractual language is ambiguous. *See*, *e.g.*, *Fed. Nat'l Mortg. Ass'n v. Hafer*, 158 Idaho 694, 702, 351 P.3d 622, 630 (2015) ("Ambiguities in a contract of adhesion should be construed against the drafter."); *Guzman v. Piercy*, 155 Idaho 928, 936, 318 P.3d 918, 926 (2014) ("The Court construes a stipulation against the drafter."). But since he has never made that argument, and he conceded that Farm Bureau was correct below, his claim on appeal that the 2011 Memorandum means something other than the district court held fails. As Farm Bureau notes, "[w]hen read as a whole, the 2011 [Memorandum] evidences that Farm Bureau is free to terminate an agent who could still qualify to receive a Service Bonus Commission so long as they fulfill the 1-year non-competition eligibility requirement." We thus affirm the district court's initial conclusion on this basis.

    2. <u>The district court's holding that Trumble had no right to the service bonus commission was proper</u>.

Trumble raises additional issues regarding the 2011 Memorandum that are properly before us on appeal. He submits that the non-competition and forfeiture provisions in the 2011 Memorandum are unenforceable on three grounds: (1) the non-competition clause is subject to reasonableness standards and, as written, it is not reasonable; (2) the forfeiture clauses are impermissible because they are penalties that bear no reasonable relationship to Farm Bureau's damages; and (3) the forfeiture clauses are unconscionable. Each ground will be discussed in turn.

*a. The non-competition and forfeiture provisions are reasonable as a matter of law.*

Trumble argues that a "reasonableness standard" should prohibit the reach of the forfeiture clause here because the amount at issue is so substantial that it would be unreasonable to enforce the non-competition clause against him. He supports this argument by asserting that the $251,431.96 service bonus was based on his production and was "earned and vested" over his twenty plus years with the company. Thus, he contends, Idaho should adopt and follow the law that forfeitures tied to restrictive covenants are invalid and/or not enforceable because they are unreasonable.

The facts here do not support Trumble's claim. While the service bonus commission is credited yearly based on the agent completing a qualifying service year, and the amount of the commission is placed on deposit with interest, the 2011 Memorandum clearly states that "[t]he commission credit made on behalf of each agent and interest will not become payable to agent . . . until the agent complies with all other requirements of the plan, terminates, and fulfills the no competition requirements." The 2011 Memorandum further states that if these requirements are not met, "[a]ny commission credit which does not become payable to agent will revert back to" Farm Bureau. Thus, Trumble's credit for service bonus commissions was never "earned" or "vested," and it appropriately reverted to Farm Bureau when Trumble joined another insurance agency within the one-year period.

Trumble's position is juxtaposed against the Court of Appeals' holding in *Anderson* which weighed heavily in the district court's analysis in granting summary judgment against him. Trumble argues that *Anderson* does not fit the facts presented here and that its legal conclusions are erroneous. Trumble posits that the analysis of courts in other states shows that the *Anderson* court's conclusion is now incorrect.

10

Trumble's reasonableness argument fails for two reasons. First, Trumble was not an employee of Farm Bureau. Most courts that have applied the reasonableness test have done so in the context of an employer-employee relationship not present here. *E.g.*, *Morris v. Schroder Cap. Mgmt. Int'l*, 859 N.E.2d 503, 507 (N.Y. 2006) (applying the reasonableness test to employer-employee relationship); *Gaver v. Schneider's O.K. Tire Co.*, 856 N.W.2d 121, 130 (Neb. 2014) (applying reasonableness standard to employer-employee non-compete); *Lavey v. Edwards*, 505 P.2d 342, 345 (Ore. 1973) (explaining the validity or invalidity of forfeiture clauses in employee pension plans should be determined by the test of reasonableness); *but see Deming v. Nationwide Mut. Ins. Co.*, 905 A.2d 623 (Conn. 2006) (recognizing it was adopting a minority view, the appellate court analyzed the forfeiture of deferred compensation as it would an employment contract non-compete clause). Indeed, this Court applies reasonableness standards to determine whether covenants not to compete in *employment contracts* are valid. *E.g. Freiburger v. J-U-B Eng'rs, Inc.*, 141 Idaho 415, 420, 111 P.3d 100, 105 (2005) ("A covenant not to compete in an employment contract must be reasonable as applied to the employer, the employee, and the public."). Trumble's status as an independent contractor distinguishes the cases holding that forfeiture clauses are subject to a reasonableness analysis. The district court appropriately recognized that Trumble was not an employee of Farm Bureau and that his right to payment was neither earned nor vested. As a result, the reasonableness analysis applicable to employees does not apply in Trumble's case.

Second, the district court appropriately applied *Anderson* in reaching this conclusion. *Anderson* involved an insurance agent who, like Trumble, was an independent contractor, as opposed to an employee. 112 Idaho at 465, 732 P.2d at 703. The Court of Appeals analyzed two separate contracts in making its decision, but one of those contracts was nearly identical to the 2011 Memorandum, so its reasoning and holding covers the facts of this case. *See id*. at 470, 732 P.2d at 708. Like the issue presented here, in *Anderson* the court was asked to determine whether an agreement which "provided for 'service bonus' commissions upon termination if 'the agent . . . does not compete with the Companies for a period of one year after he has terminated'" was an unreasonable restraint of trade. *Id*. In holding that this provision was enforceable, the Court of Appeals stated:

> Anderson argues that such provisions are anti-competition covenants and, as such, are void as restraints of trade. This characterization is overbroad. Agency

11

contracts often do contain non-competition covenants. These covenants usually require the agent to refrain from working in the insurance business for certain time periods and within certain geographical limitations. They will be upheld if they are *ancillary to employment* and are reasonable in their application to the covenantor, the covenantee and the general public. However, the provisions set forth in the contracts before us are not restrictive covenants in this sense. They do not prohibit competition; they simply impose contractual forfeitures. Provisions of this type generally are not considered restraints of trade.

*Id.* (emphasis added) (citations omitted).

This legal conclusion remains correct and forecloses Trumble's argument over the forfeiture clause here. Since the non-competition clause is a forfeiture provision, it is not subject to the same reasonableness analysis that a non-competition covenant applicable to an employee would be. As the district court recognized,

[c]oncededly, these forfeitures impose a cost for engaging in competition. But the agent, through his competitive activity, mitigates the cost by soliciting customers to buy insurance from the new carriers he represents. The strong weight of judicial authority upholds such agreements even when they are unrestricted in time or territory.

(Quoting *Anderson*, 112 Idaho at 470, 732 P.2d at 708). The strong weight of judicial authority continues to support this conclusion.

    b.  *The forfeiture clause does not amount to a penalty.*

Trumble's next argument relies on his first. He maintains that the forfeiture clause acts as a penalty because he had already earned the service bonus commissions. Trumble again contends that words like "will be placed on deposit," and "termination of the Commission Contract will not reduce accrued credits" in the 2011 Memorandum showed that the commissions have already been earned—making the forfeiture an unenforceable penalty "designed to deter a breach or to punish the breaching party rather than compensate the injured party. . . ." As we have already held, the clear mandate of the 2011 Memorandum is that the agent must comply with all the requirements before becoming eligible to receive payment of the service bonus commission. Trumble never became qualified as he violated the non-competition requirement.

Trumble equates the forfeiture provision to a liquidated damages clause, noting that forfeiture provisions should not be enforced when they are "designed to deter a breach or to punish the breaching party rather than compensate the injured party for damages occasioned by the breach." *Hull v. Giesler*, 156 Idaho 765, 779, 331 P.3d 507, 521 (2014). Trumble also cites

12

*Magic Valley Truck Brokers, Inc. v. Meyer*, 133 Idaho 110, 117, 982 P.2d 945, 952 (Ct. App. 1999) in support of his argument. *Magic Valley* is readily distinguishable. There, the employment contract between the plaintiff and the defendant provided that in the event of a breach of a non-competition clause by the plaintiff, the defendant would be entitled to liquidated damages in the amount of $5,000 for each calendar month of competition by the plaintiff. 133 Idaho at 113, 982 P.2d at 948. The court held that the clause was unenforceable as exorbitant and unconscionable, amounting to an unenforceable penalty. *See id.* at 117, 982 P.2d at 952.

Unlike *Magic Valley*, but like the district court below, we hold that the non-competition provision in the 2011 Memorandum is not a liquidated damages clause. We note that the Agent's Contract, like the agreement in *Magic Valley*, set forth the agent's promise not to compete for ninety days and contained a liquidated damages clause in the event of a *breach* of that agreement by the agent. In contrast, in the 2011 Memorandum, the non-competition provision is a condition of *eligibility* to receive the service bonus commission, rather than a contractual promise that would be breached by the agent engaging in competition. As noted, the 2011 Memorandum provides that the service bonus commission

> will not become payable to agent . . . until the agent complies with all other requirements of the plan, terminates, and fulfills the no competition requirements.
> . . . .
> A violation of the no competition restriction will result in forfeiture of the service bonus commission and interest credited.

> The service bonus commission will be paid one year after the agent terminates their contract with [Farm Bureau], provided the no competition restriction is observed.

Provisions of this type do not prohibit competition and they are not imposed as a penalty for any breach. They simply impose a cost as a consequence for choosing to compete with Farm Bureau within one year of termination – and that cost is a valid "cost for engaging in competition." *Anderson*, 112 Idaho at 470, 732 P.2d at 708.

> c. *The forfeiture clause is not unconscionable.*

Trumble also asserts that the forfeiture provision is unconscionable. For a contract provision to be void as unconscionable, it must be both procedurally and substantively unconscionable. *Lovey v. Regence BlueShield of Idaho*, 139 Idaho 37, 42, 72 P.3d 877, 882 (2003). Procedural unconscionability concerns the bargaining process leading up to the

13

formation of a contract. *Wattenbarger v. A.G. Edwards & Sons, Inc.*, 150 Idaho 308, 321, 246 P.3d 961, 974 (2010). Substantive unconscionability focuses on the terms of the contract. *Id.*

> Procedural unconscionability exists when the contract was not the result of free bargaining between the parties. Indicators of procedural unconscionability generally include a lack of voluntariness and a lack of knowledge. Indicators of lack of voluntariness include the use of high-pressure tactics, coercion, oppression or threats short of duress. A lack of voluntariness can be shown by an imbalance in bargaining power resulting from the non-negotiability of the stronger party's terms and the inability to contract with another party due to time, market pressures, or other factors. Indicators of a lack of knowledge include a lack of understanding regarding the contract terms arising from the use of inconspicuous print, ambiguous wording, or complex legalistic language; the lack of opportunity to study the contract and inquire about its terms; or disparity in sophistication, knowledge, or experience of the parties.

> The focus of substantive unconscionability is solely on the terms of the contractual provision at issue. A provision is substantively unconscionable if it is a bargain no reasonable person would make or that no fair and honest person would accept. If a contract term is one-sided or oppressive, it may be substantively unconscionable. In determining whether a term is unconscionable, a court must consider the purpose and effect of the terms at issue, the needs of both parties and the commercial setting in which the agreement was executed, and the reasonableness of the terms at the time of contracting.

*Id.* (internal quotations and citations omitted). When reviewing an unconscionability determination made by a trial court, the appellate court accepts the factual findings made by the trial court, as long as they are supported by substantial, competent evidence, and freely reviews as a question of law whether under those facts, a contractual provision is unconscionable. *Lovey*, 139 Idaho at 41, 72 P.3d at 881.

The district court here held that "the record is devoid of any facts which the [c]ourt could consider in making an unconscionability determination. [Trumble] simply asserts in his briefing that the bonus service commission memorandum 'was not even a bargained for contract.'" Trumble's argument on appeal mirrors that made before the district court. He claims that the 2011 Memorandum was "not even a bargained for or signed contract[,]" and that "including a forfeiture based upon 'dishonest' conduct is substantively unconscionable because it is oppressive." These allegations are insufficient as a matter of law to establish either procedural or substantive unconscionability. We recognize and agree with the general legal premise refusing to enforce forfeiture penalties that bear no rational basis to the damages incurred by an employer

14

when an employee competes against it. *E.g.*, *Magic Valley*, 133 Idaho at 117, 982 P.2d at 952. With that said, these principles are of no moment here because: (1) Trumble was not an employee of Farm Bureau; and (2) the forfeiture provision in the non-competition clause was merely part of a unilateral offer that never materialized. Once again, the non-competition provision in the 2011 Memorandum is a condition of eligibility to receive a service bonus commission; it is not a contractual promise on the part of the agent that would be breached by the agent competing with Farm Bureau. Thus, the 2011 Memorandum is not unconscionable.

   3. Trumble's quasi-estoppel, futility and anticipatory repudiation arguments are unsupported by the record and applicable case law.

Trumble also argues that statements made by Farm Bureau at and around the time of Trumble's termination relieved Trumble from complying with the non-competition clause based on the doctrines of quasi-estoppel, futility, and/or anticipatory repudiation. First, Trumble alleges the doctrine of quasi-estoppel bars Farm Bureau from relying on the non-competition clause in the 2011 Memorandum because Farm Bureau took inconsistent positions about why Trumble had no right to the service bonus commission. Second, Trumble argues that the doctrine of futility released Trumble from complying with the non-competition clause. Lastly, Trumble argues that Farm Bureau anticipatorily repudiated its "contract" when Farm Bureau informed Trumble he would not receive the service bonus commission regardless of his compliance with the non-competition clause.

   *a. Quasi-estoppel does not apply.*

First, Trumble asserts the doctrine of quasi-estoppel bars Farm Bureau from relying on the non-competition clause in the 2011 Memorandum. According to Trumble, Farm Bureau was inconsistent by representing at the time of termination that Trumble would never receive a service bonus commission even if Trumble complied with the non-competition clause.

"The doctrine of quasi-estoppel 'prevents a party from asserting a right, to the detriment of another party, which is inconsistent with a position previously taken.' " *Keybank Nat'l Ass'n v. PAL I, LLC*, 155 Idaho 287, 294, 311 P.3d 299, 306 (2013). The doctrine applies when:

> (1) [T]he offending party took a different position than his or her original position and (2) either (a) the offending party gained an advantage or caused a disadvantage to the other party; (b) the other party was induced to change positions; or (c) it would be unconscionable to permit the offending party to

15

maintain an inconsistent position from one he or she has already derived a benefit or acquiesced in.

*Id.* (quoting *Atwood v. Smith*, 143 Idaho 110, 114, 138 P.3d 310, 314 (2006)). "Quasi-estoppel is essentially a last-gasp theory under which a defendant who can point to no specific detrimental reliance due to plaintiff's conduct may still assert that plaintiffs are estopped from asserting allegedly contrary positions where it would be unconscionable for them to do so." *Id.* (quoting *Schoonover v. Bonner Cnty.*, 113 Idaho 916, 919, 750 P.2d 95, 98 (1988)).

Here, Farm Bureau has consistently maintained one general position—Trumble is not entitled to the service bonus commission because he did not satisfy all of the eligibility requirements under the 2011 Memorandum. Farm Bureau first informed Trumble he would not be entitled to the service bonus commission because he was terminated for dishonest conduct. At that time, Farm Bureau also informed Trumble that "even if [Trumble] were entitled to his service bonus, the Memorandum contains a non-competition clause restricting payment until after compliance for a 12-month period." During litigation, Farm Bureau discovered Trumble was competing and violating the non-competition clause in the 2011 Memorandum. Based on this information, Farm Bureau filed for summary judgment arguing Trumble had no right to the service bonus commission in spite of the dishonesty allegations because it was undisputed that Trumble was competing in direct violation of the one-year non-competition clause. Thus, while Farm Bureau's initial statements and reasons for terminating Trumble were based on allegations of dishonesty, those claims were not the sole basis for its asserted defenses, as its counsel pointed-out in the May 9, 2016, letter, within days of Trumble's termination as set forth above. Trumble cannot show that Farm Bureau took an inconsistent position and then changed that position in an unfair way. Trumble thus fails to satisfy the first factor necessary to establish a successful quasi-estoppel claim.

*b. The contract doctrine of anticipatory repudiation does not apply.*

Based on the same statements made by Farm Bureau at the May 4, 2016, meeting and in the May 9, 2016, letter, Trumble argues that Farm Bureau anticipatorily repudiated its obligations under the 2011 Memorandum when it told Trumble that he would not receive the service bonus commission. "An anticipatory breach of a contract has been defined as 'a repudiation [by the promisor] of his contractual duty *before the time fixed in the contract for his performance has arrived.*' " *Swafford v. Huntsman Springs, Inc.*, 163 Idaho 209, 213, 409 P.3d

16

789, 793 (2017) (emphasis in original) (quoting *Foley v. Munio*, 105 Idaho 309, 311, 669 P.2d 198, 200 (1983)). A repudiation is "a statement by the obligor to the obligee indicating that the obligor will commit a breach that would of itself give the obligee a claim for damages for total breach[.]" RESTATEMENT (SECOND) OF CONTRACTS § 250 (1981). A repudiating party's language "must be sufficiently positive to be reasonably interpreted to mean that the party will not or cannot perform." *Id*. cmt. b. Further, a statement of repudiation must threaten a breach of sufficient gravity that, "if the breach actually occurred, it would of itself give the obligee a claim for damages for total breach. . . ." *Id*. cmt. d.

Again, the doctrine of anticipatory breach requires the breach of a contractual duty. Farm Bureau's obligation under the 2011 Memorandum to pay the service bonus commission did not arise until Trumble satisfied all the stated eligibility conditions. Without an obligation to make such a payment, there can be no anticipatory repudiation because Farm Bureau did not breach any contractual duty—Farm Bureau had none.

Beyond that, the May 9, 2016, letter contemplated the possibility that Farm Bureau misjudged Trumble's behavior and specifically informed Trumble that the non-competition provision applied even if the dishonesty provision did not apply, when it stated, "even if Mr. Trumble were entitled to his service bonus, the [2011] Memorandum contains a non-competition clause restricting payment until after compliance for a 12-month period." Thus, as the district court noted, Farm Bureau did not express that Trumble would *never* be paid under any circumstances, but that Trumble could maintain eligibility for the service bonus commission if he successfully challenged Farm Bureau's allegations about his dishonesty. Farm Bureau issued this clarification two weeks before Trumble filed his initial complaint on May 23, 2016, and months before Trumble began working for Post Insurance in August 2016. As the district court summarized:

> So while [Trumble] has established that he believed [Farm Bureau] would not pay the service bonus because they thought he acted dishonestly, there are no facts in the record to support a claim that [Trumble] reasonably believed there had been an anticipatory repudiation of *all* eligibility requirements of the [2011 Memorandum by Farm Bureau] prior to his filing of the Complaint or to competing in August of 2016.

Thus, Trumble's attempt to show that Farm Bureau repudiated an obligation to pay him before he qualified for the same is unsupported by this record.

17

*c. The doctrine of futility does not apply.*

Trumble asserts he did not need to comply with the non-competition clause because doing so would be futile. He argues that once Farm Bureau declared that it would not pay the service bonus commission to Trumble due to his alleged dishonesty, it would have been futile for him to comply with the one-year covenant not to compete. This argument fails for the same reasons stated regarding his anticipatory repudiation argument.

The law is well settled that one will not be required to undertake a useless act. *Ford v. Lord*, 99 Idaho 580 (1978). Even so, as has been established, Farm Bureau made clear to Trumble well before he filed his complaint that "even if Mr. Trumble were entitled to his service bonus, the [2011] Memorandum contains a non-competition clause restricting payment until after compliance for a 12-month period." Given the conclusion that Trumble had to comply with the 12-month non-competition clause before he was eligible for any bonus commission payments, his argument that it would have been useless to adhere to the non-competition clause because Farm Bureau had already made up its mind is erroneous. He ultimately filed suit and had every right to disprove Farm Bureau's claims that he was terminated for dishonesty. Had he successfully done so, while waiting for the one-year period to run, he would have been eligible to receive the service bonus commission. Thus, it would not have been futile for him to make that choice and avoid competing with Farm Bureau for one year as required.

**B. The district court properly granted summary judgment for Trumble on the misappropriation and intentional interference of a prospective economic advantage claims.**

Farm Bureau alleges the district court erroneously granted summary judgment for Trumble on its misappropriation and intentional interference of a prospective economic advantage claims. Farm Bureau continues to argue on appeal that the Subject List is a trade secret and that Trumble's mere usage constitutes a misappropriation under the ITSA. Farm Bureau also argues that by violating the ITSA, Trumble wrongfully interfered with Farm Bureau's prospective economic advantage. We affirm the district court's grant of summary judgment for Trumble.

1. The district court did not err in granting summary judgment for Trumble on the misappropriation claim because the Subject List is not a trade secret.

18

In its initial counterclaim, Farm Bureau alleged the Subject List constituted a trade secret because the list contained "confidential and proprietary internal records, lists and data compiled, owned and used by Farm Bureau in its operations, which Farm Bureau ha[d] continue[d] to protect as confidential." Farm Bureau further alleged that "Trumble's retention, possession and/or use of the above confidential information constitute[d] a misappropriation" in violation of the ITSA. In reply, Trumble argued he created the Subject List after he was terminated, the list was created based on his own personal knowledge and experience, the Subject List derived no independent economic value, and Farm Bureau did not reasonably maintain its secrecy. Further, even if the Subject List were a trade secret, Trumble argued he did not acquire it by improper means and therefore did not misappropriate the Subject List.

The district court found nothing in the record to refute Trumble's assertions that he created the Subject List after termination based on his phone contacts, commission statements, and calendars and that none of these sources "contained the kind of proprietary information that could only have been obtained from [Farm Bureau]." The district court also found "no evidence that the actual information at issue in this case was subject to any reasonable efforts to maintain its secrecy" past the ninety-day non-competition clause in the Agent Contract. The district court ultimately ruled the Subject List was not a trade secret. The district court reiterated that even if the Subject List were a trade secret, Trumble did not acquire it through improper means. The district court thus ruled there was no genuine dispute based on the evidence provided and granted summary judgment in Trumble's favor.

On cross-appeal, Farm Bureau argues the district court erroneously granted summary judgment in Trumble's favor because Trumble admitted in his affidavit that "a few names on the Subject List (approximately 20 or so) came from [his] old commission statements and calendars." Farm Bureau interprets this statement as Trumble admitting use of a customer list, which, according to Farm Bureau, by itself constitutes a trade secret. Farm Bureau also alleges mere usage of the customer list constitutes misappropriation. Farm Bureau's argument, with no additional evidence, does not create a genuine dispute.

"To prevail in a claim brought under the ITSA, '[a] plaintiff must show that a trade secret actually existed.' " *La Bella Vita*, LLC v. Shuler, 159 Idaho 799, 807, 353 P.3d 420, 428

19

(quoting *Basic Am., Inc. v. Shatila*, 133 Idaho 726, 734, 992 P.2d 175, 183 (1999)). Without this showing, there can be no misappropriation. *Id*. The ITSA defines a trade secret as:

> [I]nformation, including a formula, pattern, compilation, program, computer program, device, method, technique, or process, that:
>
> (a)   Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and
>
> (b)   Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy. . . .

I.C. § 48-801(5). This Court has also taken direction from the Restatement of Torts section 757, which lists six additional factors that can be used to determine whether information is, or is not a trade secret. *Shatila*, 133 Idaho at 735, 992 P.2d at 184. These factors include

> (1) the extent to which the information is known outside [the plaintiff's] business; (2) the extent to which it is known by employees and others involved in the business; (3) the extent of measures taken by [the business] to guard the secrecy of the information; (4) the value of the information to [the business] and [its] competitors; (5) the amount of effort or money expended by [the business] in developing the information; and (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.

*Id*. (quoting RESTATEMENT OF TORTS § 757, cmt. b (1939)). These factors are not required, but "address the issue of whether the information in question is generally known or readily ascertainable." *Id*.

When a plaintiff successfully establishes the existence of a trade secret, the plaintiff must also show that the defendant misappropriated the trade secret. *See* I.C. § 48-801. Misappropriation is defined as:

> (a)   Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or
>
> (b)   Disclosure or use of a trade secret of another without express or implied consent by a person who:
>
>    A. Used improper means to acquire knowledge of the trade secret; or
>
>    B.   At the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was:
>
>       i.   Derived from or through a person who had utilized improper means to acquire it;
>
>       ii.   Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or

20

> iii.    Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or
>
> C.    Before a material change of his position, knew or had reason to know that it was a trade secret and that knowledge of it has been acquired by accident or mistake.

I.C. § 48-801(2). Improper means include "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy. . . ." I.C. § 48-801(1).

Farm Bureau notes that this Court has held customer lists are trade secrets. *See Wesco Autobody Supply, Inc. v. Ernest*, 149 Idaho 881, 898, 243 P.3d 1069, 1086 (2010) (explaining "customer lists . . . are trade secrets."); *see also Northwest Bec-Corp v. Home Living Serv.*, 136 Idaho 835, 839, 41 P.3d 263, 267 (2002) (explaining that it was undisputed the customer list was a trade secret). Even so, not every customer list constitutes a trade secret. *See La Bella Vita*, 158 Idaho at 810, 353 P.3d at 431.

In *La Bella Vita*, a salon sued its former employees who had opened their own salon, alleging the former employees misappropriated trade secrets. *Id.* at 803, 353 P.3d at 424. According to the salon, the former employees "wrongfully took and used its confidential client lists, calendars, scheduling lists, client contact information, and other information regarding products, services, and client preferences in the creation and promotion" for the new salon. *Id.* at 802, 353 P.3d at 423. In response, the former employees argued the lists were compiled from their own personal efforts including information from "cell phone and email contacts, church membership directories, social media connections, suggestions and referrals from family and friends, public phone books, online directories, internet searches, word of mouth, and use of referral cards." *Id.* at 808, 353 P.3d at 429. The district court granted summary judgment against the salon, finding no evidence produced to refute the fact the former employees generated the client list through "*alternative and independent methods and sources*." *Id.* at 803, 353 P.3d at 424 (emphasis added). On appeal, the salon argued summary judgment was improper because there was a genuine dispute about the lists' confidentiality, no matter how the lists were compiled. *Id.* at 808, 353 P.3d at 429. In support of these contentions, the salon provided evidence including, but not limited to, the confidentiality of its clients. *Id.* at 810, 353 P.3d at 431. The salon's confidentiality and privacy practices were established through the testimony of its owner:

> [La Bella Vita's] data system included the names, phone numbers, physical addresses, email addresses, special dates (birthday, anniversaries), services and product profiles used by the client . . . and referral information. This information was generated for the specific purpose of keeping the clients as customers and maintaining good client relations. I was careful to ensure that all of this information was included as part of our confidentiality contract with our employees. The importance of keeping this information confidential was discussed in the confidentiality contract as well as the employee handbook.

*Id*. These customer lists were stored at the salon "in a way that the information did not become public." *Id*. The former employees argued the lists were not confidential because it was the practice of the salon to print portions of the list as a daily schedule and post these schedules around the salon, allowing anyone receiving services to view them. *Id*. at 811, 353 P.3d at 432. This Court held summary judgment was improper because "a genuine factual dispute as to the confidential nature of [the salon's] client list and client-related information" was presented. *Id*. at 812, 353 P.3d at 433. Although this Court did not identify the parameters for what constitutes confidentiality, we noted that "[a] person's contact information can be ascertained in a variety of ways, including through the involuntary sharing or selling of information. It is nearly impossible to completely control these other avenues . . . even though [the salon's] clients considered the same to be non-public and confidential." *Id*. at 814, 353 P.3d at 435.

Here, the Subject List does not constitute a trade secret because it was almost wholly generated from alternative and independent sources, it contained generally known information and Farm Bureau took few efforts to maintain its secrecy. First, the Subject List was generated from alternative and independent sources. In *La Bella Vita*, the district court found the customer list may not have been a trade secret because the list could be generated from alternative and independent sources such as "cell phone and email contacts, church membership directories, social media connections, suggestions and referrals from family and friends, public phone books, online directories, internet searches, word of mouth, and use of referral cards." 159 Idaho at 808, 353 P.3d at 429. Although this Court ultimately held the district court erred in granting summary judgment against the salon owner, this Court's holding was based on confidentiality concerns regarding the customer list itself, not how it was generated. *See id*. at 810, 353 P.3d at 431. Thus, customer lists generated from independent sources such as those identified do not automatically constitute trade secrets. *See id*. Here, the Subject List was mostly generated from Trumble's personal knowledge accumulated while working as an insurance agent as well as through the

contacts in his phone. Although around twenty names on the Subject List were compiled from old commission statements and calendars accessed when Trumble was working for Farm Bureau, most of the names included on the list were from Trumble's own alternative and independent sources.

Second, the Subject List generally contains only contact information of individuals—their names and addresses. As briefly noted in *La Bella Vita*, contact information can be determined in many ways, even if involuntarily, making it essentially public information. *Id*. at 814, 353 P.3d at 435. Such public information cannot, on its own, constitute a trade secret.

Third, Farm Bureau did not take reasonable efforts to maintain the secrecy of the information included on the Subject List. The Subject List includes names and addresses only. This information was compiled mostly from Trumble's phone contacts. Mr. Swore, a Farm Bureau employee who maintained the operating systems and network infrastructure, provided testimony about Farm Bureau's protocol after an agent is terminated and explained how an agent's contacts are removed from Farm Bureau's server and any saved contacts, including addresses, are sent directly to the terminated individual. In his deposition, Mr. Swore testified that Trumble's contacts were sent directly to him. After learning Trumble's contacts had not been sent to Trumble, Mr. Swore altered his testimony accordingly. However, Mr. Swore did not alter his testimony about Farm Bureau's protocol. It is hard to maintain an argument that contacts generated during employment are intended to remain a secret when Farm Bureau's practice is to provide terminated individuals with a copy of their contacts from the server.

Farm Bureau particularly challenges the portion of the Subject List that Trumble admits was generated from past commission statements sent by Farm Bureau. Although this Court did hold summary judgment was improper when conflicting testimony was provided about the general business practices regarding the confidentiality of the customer list and customer information, 158 Idaho at 812, 353 P.3d at 433, here no such dispute is supported by the record. Farm Bureau sent unredacted commission statements to Trumble throughout his tenure which included the names of customers and customer policy numbers. It is also undisputed that the commission statements lacked any language relaying the statements as confidential. There also was no business policy or practice in place informing agents that the information in the commission statements was confidential. And even if there were some aspect of confidentially

23

implied by Farm Bureau about the commission statements, the statements did not have addresses of the customers. Thus, on these facts we conclude that the Subject List could not have divulged confidential information when the information Trumble used to mail solicitation letters was not included in the commission statements. Based on these reasons, we agree with the district court that the Subject List is not a trade secret.

Even if the list were a trade secret, Farm Bureau is also required to prove Trumble misappropriated its trade secrets in order to establish a successful ITSA claim. Merely using information obtained during his association with Farm Bureau in a new capacity does not rise to the level of misappropriation. *Northwest Bec-Corp v. Home Living Service*, 136 Idaho 835, 839, 41 P.3d 263,267 (2002) (explaining that the legislature did not intend the ITSA to be read so broadly that merely hiring a competitor's employee constitutes acquiring a trade secret because employees will naturally take with them the skills, training and knowledge acquired from previous employment). Nor is there any evidence in the record that the Subject List was acquired through improper means. Farm Bureau made no allegation of theft, bribery or misrepresentation. Its argument is founded on Trumble breaching a duty to maintain secrecy. As discussed directly above, Farm Bureau did not take reasonable efforts to maintain secrecy. Even so, the district court found that the Agent Contract provided a specific list of forbidden activities that a terminated agent could not participate in for a period of ninety days. Thus, the district court found that this provision signified that after the ninety days had passed, Trumble was free to engage in any of the listed activities without breaching the Agent Contract. Trumble adhered to the ninety-day term in the Agent Contract and thus there was no evidence of breach to maintain secrecy. Farm Bureau had the duty "to present evidence that demonstrated there was a genuine issue of material fact in order to survive summary judgment." *Id*. at 841, 41 P.3d at 269. It failed to do so. Summary judgment in Trumble's favor was proper on the misappropriation claim.

2. The district court properly granted summary judgment for Trumble on the intentional interference with a prospective economic advantage claim.

To maintain a successful claim for intentional interference with a prospective economic advantage, a plaintiff must show:

> (1) [T]he existence of a valid economic expectancy, (2) knowledge of the expectancy on the part of the interferer, (3) intentional interference inducing termination of the expectancy, (4) the interference was wrongful by some measure

24

beyond the fact of the interference itself, and (5) resulting damage to the plaintiff whose expectancy has been disrupted.

*Wesco*, 149 Idaho at 893, 243 P.3d at 1081 (quoting *Cantwell v. City of Boise*, 146 Idaho 127, 138, 191 P.3d 205, 216 (2008)). Interference is wrongful where "(1) the interferer had an improper motive to harm the plaintiff; or (2) the means used by the interferer to cause injury to the prospective advantage were wrongful by reason of statute, regulation, recognized common law rule, or an established standard of a trade or profession." *Syringa Networks, LLC v. Idaho Dep't. of Admin.*, 155 Idaho 55, 64–5, 305 P.3d 499, 508–09 (2013). "The mere pursuit of one's own business purposes is not sufficient to support an inference of an improper motive to harm the plaintiff." *Id.*at 65, 305 P.3d at 509.

Farm Bureau's argument that Trumble interfered with its economic expectancy is based on Trumble's alleged violation of the ITSA. As noted above, there is no genuine dispute based on the record that Trumble violated the ITSA. Without an ITSA violation, there can be no intentional interference claim based on Farm Bureau's arguments. Beyond that, Trumble's actions were taken to pursue his own business purposes. Pursuing one's own business interest cannot support an inference of an improper motive to harm Farm Bureau. *See id*.

In summary, Farm Bureau provided no additional evidence to create a genuine dispute that the Subject List was a trade secret, that Trumble misappropriated the Subject List or that Trumble wrongfully interfered with Farm Bureau's prospective economic advantage. Summary judgment for Trumble on Farm Bureau's counterclaims was proper. We affirm the district court.

### C.     Neither party is entitled to attorney fees or costs on appeal.

Both parties request attorney fees and costs on appeal under Idaho Code section 12-120(3). Section 12-120(3) states "[i]n any civil action to recover . . . in any commercial transaction unless otherwise provided by law, the prevailing party shall be allowed a reasonable attorney's fee to be set by the court, to be taxed and collected as costs." Commercial transaction is "defined to mean all transactions expect transactions for personal or household purposes." *Id*. In determining which party prevailed where there are claims and counterclaims between opposing parties, this Court determines who prevailed in the action from an overall view, not through a claim-by-claim analysis. *Oakes v. Boise Heart Clinic Physicians, PLLC*, 152 Idaho 540, 545, 272 P.3d 512, 517 (2012).

25

Here, we affirm the district court's grant of summary judgment for Farm Bureau holding Trumble had no right to the service bonus commission. We also affirm the district court's grant of summary judgment for Trumble on the misappropriation and intentional interference with a prospective economic advantage claims. Based on our rulings, neither party prevailed. As a result, neither party is entitled to attorney fees or costs on appeal.

## VI. CONCLUSION

The district court's grant of summary judgment for Farm Bureau is affirmed. The district court's grant of summary judgment for Trumble on Farm Bureau's counterclaims of misappropriation of trade secrets and intentional interference with a prospective economic advantage is also affirmed. Neither party is entitled to attorney fees or costs on appeal.

Chief Justice BURDICK, Justices BRODY, STEGNER and MOELLER, CONCUR.